IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:16-CV-00023-FL

| | | |
|---|---|---|
| VALERIE SIMMONS TRIPP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| COUNTY OF GATES, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 38).[1] The issues raised are ripe for ruling. For the following reasons, the court grants defendant's motion to dismiss as set forth herein.

## BACKGROUND

Plaintiff, proceeding pro se, commenced this action against her former employer, the County of Gates, and various County employees and/or representatives on May 20, 2016, asserting claims for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"). Defendants filed motion to dismiss. Shortly thereafter counsel entered appearance on behalf of plaintiff. Motion to amend complaint followed.

The court allowed plaintiff's motion together with defendants' motion for a more definite statement, as set forth in text order entered December 1, 2016. Defendants' motion to dismiss was

---

[1]     While defendant's motion on its face seeks dismissal pursuant also to Federal Rules of Civil Procedure 12(b)(2), (b)(4), and (b)(5), no arguments grounded on those subparts of Rule 12 were offered in support thereof.

denied as moot.   In amended complaint, plaintiff proceeds only against defendant named above, having abandoned any claims against individual defendants.

On April 24, 2017, defendant filed the instant motion to dismiss, asserting that plaintiff's claims must be dismissed because they fail as a matter of law, are time barred, and/or are outside the scope of plaintiff's previously filed charges with the EEOC.  Plaintiff responded in opposition to the instant motion on May 25, 2017, and defendant replied on June 7, 2017.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows.

Plaintiff Valerie Tripp is a black female employed by defendant beginning September 19, 2006.  During her time working for defendant, plaintiff held numerous job titles.  Plaintiff originally was hired as a secretary for the zoning/building inspector at a rate of compensation of $11.63 an hour, with subsequent "cost of living" pay increases over the next few years.  (Compl.¶ 7).  In 2010, plaintiff became a permit officer at a salary of $25,038.00 per year.  Around March 2013, plaintiff assumed the additional duties of county planner after the former county planner, who was a white woman, left the position.  In August 2013, plaintiff's position title changed to special project liaison in the finance department at a salary of $28,024.21 per year.  Approximately one month later, plaintiff's position title was changed to include customer service clerk and tax collections clerk in addition to surplus property coordinator, both of which included additional responsibilities but no salary increase.  Weeks later, plaintiff's position title was changed to include planning and zoning administrator with no salary increase.

A.     First EEOC Charge

From August to October 2013, plaintiff allegedly was subjected to unwarranted disciplinary actions for unapproved absence, failure to train a co-worker, failure to organize a box of documents, and for a phone call she connected to the county manager.  Plaintiff objected to these disciplinary actions in writing and objected to the imposition of duties without attendant pay increases, stating that her treatment was due to discrimination.

Plaintiff filed her first charge with the EEOC on November 19, 2013, asserting race-based discrimination by her supervisor for unapproved absences.   Plaintiff's first EEOC charge was resolved through settlement agreement dated February 19, 2014.   The relevant terms of the settlement agreement are memorialized in four parts: 1) plaintiff agreed not to institute a lawsuit against the county; 2) the county agreed not to discriminate or retaliate against plaintiff for filing the EEOC charge; 3) the county agreed to expunge the last three notices of deficiency from plaintiff's file; and 4) the county agreed "to meet with [plaintiff] to review her actual job duties to determine whether her salary ha[d] been established correctly."  (Id. Ex. 5).[2]

About one month after plaintiff filed her first EEOC charge, plaintiff's supervisor filed a criminal complaint with the local sheriff's department claiming, allegedly falsely, that plaintiff had stolen $200.00 from the county.  Plaintiff never was charged with the crime, although the accusation became known at plaintiff's workplace.

---

[2]     A court may consider a document attached to a motion to dismiss if it is "integral to the complaint and there is no dispute about the document's authenticity."  Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016).

B.    Settlement Agreement Implementation

As of April 1, 2014, the county had removed the notices of deficiency from plaintiff's personnel file but had not met with plaintiff regarding her job duties or salary. On March 31, 2014, plaintiff submitted, as requested by interim manager Ken Windley ("Windley"), a written list of the job duties she had been performing. Roughly one month later, Windley presented plaintiff with a "sample" new job description but told her he would need to "tweak" the description. (Id. ¶ 29). On May 1, 2014, Windley informed plaintiff that a new job description had been approved and assigned to her. At some point Windley also informed plaintiff that she would not be receiving a salary increase. On May 19, 2014, the Gates County commissioners convened and discussed plaintiff's job description, among other items, during a closed portion of the meeting.

On May 21, 2014, Windley responded to a request from an EEOC Investigator, informing the EEOC that plaintiff had provided information regarding her job duties, the information was used to create a new job description, the County's personnel board had reviewed and approved plaintiff's new job description, the board had reviewed plaintiff's salary and "felt the change made earlier in the fiscal year was sufficient, therefore no change to the salary was needed," and plaintiff approved of her new job description in a meeting with him. (Id. ¶ 26, 31, 35).

On or around June 23, 2014, plaintiff received notification of her new job title "planning and permitting technician." She was informed  there would be no change in salary, benefits, or hours and that she would now be splitting her time between two departments while coordinating with her previous department. She was also provided with an extensive list of new work functions. Plaintiff did not sign the memorandum evidencing agreement to her new job title and description. She filed a written memorandum objecting to the new job description on July 1, 2014, requesting re-

etvaluation.  On July 7, 2014, plaintiff was informed that the changes to her job title were effective

July 1, 2014.  In July and August 2014, plaintiff lodged complaints with multiple Gates County

commissioners in person, by telephone, and though emails concerning the treatment she was

receiving and the amount of work she was expected to accomplish for a salary that was  less than

$30,000.00 per year.

C.      2014 Hiring of County Planner

In August 2014, the county initiated a hiring process to fill the position of county

planner/county director, with a salary of $45,000.00 per year, and concluded the hiring process in

November 2014.  Plaintiff had been performing the duties of this position "competently and fully"

since the position became vacant in April 2013.  (Id. ¶ 47).  Plaintiff applied for the position and was

not chosen, although her experience and education met all the posted job qualifications.  Unlike

plaintiff, the person hired lacked qualifications in zoning that had been listed as a necessary

qualification for the position.  Plaintiff was informed that she did not receive the position because

she did not have experience with graphic information systems ("GIS"), experience that was not

listed as a necessary qualification for the position nor a system used by plaintiff in the time that she

had performed the duties of the position.  She was also not given the opportunity to be trained for

the position in order to overcome her alleged shortcomings.

Plaintiff tendered her resignation to the county in February 2015.

D.      Second EEOC Charge

On April 20, 2015, plaintiff filed a second charge with the EEOC, alleging race

discrimination and retaliation.  In plaintiff's second EEOC charge, she stated white employees are

compensated for their management work, are paid top salaries, are groomed for positions even when

not yet advertised, and are trained when they are under-qualified. Plaintiff asserted race-based discrimination regarding the county's decision to not promote her to county planner. On February 16, 2016, the EEOC closed its investigation and issued a notice of right to sue, which was received by plaintiff on February 20, 2016. This suit was filed 90 days later on May 20, 2016.

## COURT'S DISCUSSION

A.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.    Analysis

Plaintiff asserts breach of contract claims based on the parties' settlement agreement and Title VII claims alleging both discrimination and retaliation against defendant.   The court addresses each claim in turn below.

1.    Settlement Agreement Claims

The settlement agreement states that "[t]he parties agree . . . that this agreement may be specifically enforced in court by the EEOC or the parties and may be used as evidence in a subsequent proceeding in which a breach of this agreement is alleged." (Compl. Ex. 5).  Taking the facts as alleged in the amended complaint as true, the court finds that plaintiff has not sufficiently stated a claim for breach of the parties' settlement agreement.   Defendant contends that it substantially complied with the terms of the settlement agreement, and the court agrees.

Settlement agreements are contracts and are therefore governed by general principles of contract law.  Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 211 (4th Cir. 2009) (internal quotation omitted) ("Settlement agreements operate on contract principles, and thus the preclusive effect of a settlement agreement should be measured by the intent of the parties.").  The relevant terms of the settlement agreement are clear and in four parts:  1) plaintiff agreed not institute a lawsuit against the county; 2) the county agreed not to discriminate or retaliate against plaintiff for the filing of the EEOC charge; 3) the county agreed to expunge the last three notices of deficiency from plaintiff's file; and 4) the county agreed "to meet with [plaintiff] to review her actual job duties to determine whether her salary ha[d] been established correctly." (Compl. Ex. 5).

Plaintiff suggests that defendant breached part four of the settlement agreement by not revising her job description to plaintiff's approval, by not allowing plaintiff to more fully participate

7

in the decision-making processes, and by not increasing her compensation.[3]  However, the terms of part four of the agreement state only that the county agreed to meet with plaintiff to review her job duties to determine if her salary was correct; it did not require plaintiff's approval of the ensuing description, her extensive participation, nor did it mandate a salary increase for plaintiff.  Plaintiff repeatedly alleges that the county complied with part four of the settlement agreement as written. (See Compl.¶ 28 (interim manager Windley requested plaintiff write down all job duties she had been performing for him), ¶ 29 (interim manager Windley discussed "sample" new job description with plaintiff), ¶ 33 (new job description approved by the county and communicated to plaintiff), ¶ 34 (new job description changed to incorporate information provided by plaintiff and accurately reflects plaintiff's various duties), ¶ 35 (interim manager informed EEOC that the Personal Board has reviewed plaintiff's salary and "felt the change made earlier in the fiscal year was sufficient, therefore no change to the salary was needed"), ¶ 39 (plaintiff received notification of her new job title and that there would be no change to her salary, benefits, or hours of work), and ¶ 92 (plaintiff provided input into new job description)).

For these reasons, plaintiff's claims regarding the parties' settlement agreement must be dismissed.

2. Title VII Claims

a. Timeliness and Preclusion

Under Title VII, plaintiff must exhaust her administrative remedies by first filing a charge with the EEOC.  Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000).  This charge

---

[3]     Plaintiff implies but does not argue that the settlement agreement may also be void for failure of consideration, a lack of meeting of the minds, or as being ephemeral.  These suggestions are not support by allegations in the complaint.

must be filed within 180 days of each discrete adverse employment action described in the complaint unless plaintiff had previously filed with other authorities not applicable in this case. See, e.g., 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(d); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred"). Once the EEOC closes its investigation and plaintiff receives a right to sue letter, plaintiffs have a 90-day period in which to file their claims in court. 42 U.S.C. § 2000e–5(f)(1); see also Watts-Means v. Prince George's Family Crisis Ctr., 7 F.3d 40, 42 (4th Cir. 1993).

Plaintiff's claims fall into three temporal categories: 1) claims based on events leading up to the filing of plaintiff's first EEOC charge in November 2013; 2) a retaliation claim based on the filing of criminal charges against plaintiff in December 2013 after plaintiff filed her first EEOC charge; and 3) claims based on additional events leading up to the filing of Plaintiff's second EEOC charge in April 2015. Each category is addressed in turn below.

i.      First EEOC Charge

Claims asserted based on events leading up to the filing of plaintiff's first EEOC charge in November 2013 are not properly before this court. The settlement agreement entered into by the parties contains an integration clause and  bars plaintiff from re-opening in a Title VII action the allegations she withdrew as part of the agreement.  (See Compl. Ex. 5 ¶ 1("In exchange for the promises made by County of Gates . . . pursuant to Charge Number 437-2013-01237, Valerie S. Tripp . . . agrees not to institute a lawsuit against Respondent under Title VII . . . ."); ¶ 5 ("This document constitutes a final and complete agreement between the EEOC, Charging Party and

Respondent."); and ¶ 6 ("The parties agree . . . that this agreement may be specifically enforced in court by the EEOC or the parties and may be used as evidence in a subsequent proceeding in which a breach of this agreement is alleged.")).

Title 29 C.F.R. § 1614.504(a) provides: "Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties." Settlement agreements are contracts and are therefore governed by general principles of contract law. Ohio Valley Envtl. Coal., 556 F.3d at 211 (internal quotation omitted) ("Settlement agreements operate on contract principles, and thus the preclusive effect of a settlement agreement should be measured by the intent of the parties."). The agreement specifically contemplates the filing a claim for breach of the settlement agreement, not a Title VII action. In any event, as set forth above, plaintiff's breach of contract claim is without merit. Therefore, breach of settlement agreement provides a basis for neither a breach of contract nor Title VII claim. All claims based on allegedly discriminatory actions taken by defendant leading up the plaintiff's filing of her first EEOC charge are barred by the settlement agreement.

ii.      Filing of Criminal Charges after First EEOC Charge

As noted above, plaintiff asserts a retaliation claim based upon filing of criminal charges in December 2013. However, plaintiff did not file her second EEOC charge until April 2015, well over 180 days after the alleged retaliatory act. Therefore, plaintiff's retaliation claim on this basis is time barred in accordance with the general rule requiring filing of an EEOC charge within 180 days of a discriminatory event.

The general rule that plaintiffs must file an EEOC charge within 180 days of each discrete discriminatory act, however, is subject to a limited exception. A plaintiff, after having exhausted

her administrative remedies by filing a charge with the EEOC and receiving a right to sue letter, may file for the first time in federal court a claim that her employer retaliated against her in violation of Title VII for the filing of that charge. See Hentosh v. Old Dominion Univ., 767 F.3d 413, 416-17 (4th Cir. 2014) (citing Nealon v. Stone, 958 F.2d 584 (4th Cir.1992)).

If plaintiff's first EEOC charge was properly before this court, plaintiff's related retaliation claim would also be properly before this court. See Jones v. Calvert Grp., Ltd., 551 F.3d 297, 304 (4th Cir. 2009) (quotations omitted) ("An act committed by an employer in retaliation for the filing of an EEOC complaint is reasonably related to that complaint, obviating the need for a second EEOC complaint."). However, plaintiff's first EEOC charge was resolved by the settlement agreement entered into by the parties, did not give rise to litigation, is not properly before this court, and cannot be considered, nor can any retaliation claim that only relates to the first EEOC charge. See id. ("But the first charge did not give rise to any formal litigation and is not before us. Thus, even to the extent that the retaliation claim relates back to the first charge, that does not authorize us to consider the claim.").

Therefore, the question becomes whether plaintiffs's retaliation claim is reasonably related to plaintiff's second EEOC charge. Jones is instructive. In Jones, the Fourth Circuit found plaintiff had exhausted her administrative remedies with regard to her retaliatory termination claim because that claim was related to both plaintiff's first EEOC charge, which was not properly before the court, and to her second charge, which was properly before the court. Id. ("The critical question therefore is whether Jones's retaliation claim relates back to the charge that is properly before us, the second charge. We conclude that it does."). Significantly, the second charge "alleged a pattern of continuing conduct by [plaintiff's] employer in retaliation for her filing the first charge that included

denying her mentoring opportunities, unduly scrutinizing her performance, and giving her a negative performance review." Id. The court found that "the alleged retaliatory termination was merely the predictable culmination of [defendant's] alleged retaliatory conduct" and, accordingly, "conclude[d] that the claim of retaliatory termination was reasonably related to the allegations of the second charge." Id.

Here, by contrast, plaintiff's second EEOC charge alleges retaliation, but only in response to plaintiff's complaints about not being promoted to county planner. (See Compl. Ex. 2). Plaintiff's first EEOC charge is not mentioned in plaintiff's second EEOC charge, much less alleged as the basis of a pattern of conduct as found in Jones. (See Compl. Ex. 1). Therefore, the alleged retaliatory conduct related to plaintiff's first charge, the filing of criminal charges against plaintiff, cannot be "reasonably related" to plaintiff's second charge and is time barred.

Plaintiff argues that her claims based on events leading up to the filing of plaintiff's first EEOC charge and related retaliation claim are not time barred under the "continuing violation" doctrine. However, this doctrine is applicable to hostile work environment claims, not, as here, in an effort to revive time-barred discrete acts. See Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208, 221 n.5 (4th Cir. 2016) (citing Morgan, 536 U.S. at 116–17) ("the Supreme Court rejected the 'continuing violation' doctrine then followed in the Ninth Circuit, which held a defendant could be liable for discrete discriminatory acts that were otherwise time barred if those acts were related to subsequent violations falling within the statutory period . . . . However, it adopted such a doctrine with respect to hostile work environment claims, and this and other courts have referred to this doctrine as a 'continuing violation' approach."). Thus, the continuing violation doctrine does not

save such claims related to conduct preceding the first EEOC charge and the filing of the criminal complaint in 2013.

### iii.     Second EEOC Charge

Plaintiff's second EEOC charge was filed on April 20, 2015 and is properly before this court. Drawing "all plausible inferences" from the facts for the relevant time period, plaintiff's potential remaining Title VII discrimination claims that are not time barred are based on the following allegedly discriminatory acts: 1) plaintiff was denied promotion as county planner; 2) she did not receive pay she deserved for performing an increasing number of duties, including those of county planner; and 3) she was not given the opportunity to be trained to become the county planner. Additionally, plaintiff's potential remaining Title VII claims for retaliation that are not time barred are based on the following acts: defendant did not promote plaintiff to county planner in retaliation 1) for her filing her first EEOC charge[4] and 2) for plaintiff's complaints concerning the way in which the county handled the parties' settlement agreement.

In sum, plaintiff's second EEOC charge was filed on April 20, 2015 and is properly before this court. Any claims related to discriminatory acts plaintiff asserts occurred 180 days prior to April 20, 2015 are barred. The remaining claims are addressed below.

### b.     Failure to State a Claim

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race,

---

[4]     Although plaintiff's claim against defendant for defendant allegedly filing retaliatory criminal charges against plaintiff in response to plaintiff's filing her first EEOC charge is time barred, plaintiff's retaliation claim for not promoting plaintiff in response to plaintiff's filing her first EEOC is not. The retaliatory conduct, defendant informing plaintiff that she was not promoted, could have occurred sometime during the 180 days prior to April 20, 2015.

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits an employer from "discriminat[ing] against any of his employees or applications for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3.

A plaintiff need not establish a <u>prima facie</u> case of racial discrimination and retaliation in order to survive a motion to dismiss. The Supreme Court has rejected this requirement in the context of a motion to dismiss, <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, (2002)), but plaintiffs are still required to plead sufficient facts to support all the elements of a claim, <u>Bass v. E.I. DuPont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003) ("Our circuit has not, however, interpreted <u>Swierkiewicz</u> as removing the burden of a plaintiff to allege facts sufficient to state all the elements of her claim.").

Recently the Fourth Circuit has clarified that a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," as dictated by <u>Swierkiewicz</u>, but "the more stringent pleading standard established in <u>Iqbal</u> and <u>Twombly</u> applies." <u>Woods v. City of Greensboro</u>, 855 F.3d 639, 648 (4th Cir. 2017). Additionally, the court explained that "[w]hether [defendant's] nondiscriminatory explanation for [its alleged discriminatory behavior] is in fact pretext is a question to be analyzed under long-familiar shifting burdens regime" of <u>McDonnell Douglas v. Green</u>, 411 U.S. 792, (1973) and not under Rule 12(b)(6); however, a court still must be satisfied that defendant's explanation of its actions does not render plaintiff's allegations implausible. <u>Id.</u> at 649.

Defendant argues that some of plaintiff's Title VII claims are outside the scope of her EEOC charge and are therefore procedurally barred; however, plaintiff's second EEOC charge alleged both race discrimination and retaliation, as asserted in the instant complaint. See Jones, 551 F.3d at 300 (internal quotations omitted) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit. Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex."); Smith, 202 F. 3d at 248 (plaintiff's retaliation claim was not procedurally barred because her EEOC charge raised the issue of retaliation even though the charge made different fact allegations than did the complaint). Thus, those two sets of claims are not barred and will be addressed in turn below.

i.      Discrimination Claims

As previously stated, plaintiff's potential remaining Title VII claims are as follows: 1) she was denied promotion as county planner; 2) she did not receive pay she deserved for performing an increasing number of duties, including those of county planner; and 3) she was not given the opportunity to be trained to become the county planner. Plaintiff's claims appear to fall into three categories of discrimination: failure to promote, disparate treatment, and failure to train.

(a)      Failure to Promote

In order to state a claim for failure to promote, plaintiff must show sufficient factual allegations to support a plausible claim that "(1) she is a member of a protected group, (2) she applied for the position in question, (3) she was qualified for that position, and (4) the defendants

rejected her application under circumstances that give rise to an inference of unlawful discrimination." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005).

Plaintiff alleges without providing any examples that during her time working at the county other people, who are white, were promoted, she was not, and therefore she was not promoted because of discrimination. Without any specifics offered, this accusation is insufficient, particularly in that plaintiff offers no indication that the person hired by the county to be county planner was not another black female. See Miles v. Dell, Inc., 429 F.3d 480, 486 (4th Cir. 2005) (in summary judgment context regarding discriminatory termination, stating "[i]t is thus clear that the law in this circuit is that, as a general rule, Title VII plaintiffs must show that they were replaced by someone outside their protected class in order to make out a prima facie case").

"[N]aked allegations" of a causal connection between the employee's color, race, religion, or national origin and the alleged discrimination do not state a plausible Title VII claim. McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 585-86 (4th Cir. 2015). In McCleary-Evans, the Fourth Circuit held that a plaintiff failed to state a claim when she alleged that "non-Black decisionmakers hired non-Black applicants instead of [the Black] plaintiff" because they had "predetermined to select for both positions a White male or female candidate." Id. at 583 and 586 (internal quotations omitted). Although the allegation was "consistent with discrimination, it [did] not alone support a reasonable inference that the decisionmakers were motivated by bias." Id. at 586 (emphasis in original). Here, plaintiff alleged

even less, asserting that white decisionmakers, although she does not identify who, hired an applicant other than plaintiff, without identifying the applicant's race.[5]

Plaintiff did allege that the person hired did not have experience and familiarity with zoning and zoning issues, but Plaintiff does not allege any other lack of experience or qualifications. (Compl.¶ 60). As the Fourth Circuit stated in McCleary-Evans, the employer may have hired the alternative candidate because they were indeed "better qualified, or . . . perform[ed] better during their interviews, or were . . . better suited based on experience and personality for the position." Id. at 586. Although plaintiff asserts the reason offered why she was not hired, a lack of experience with GIS, is pretext in that she did not need to use GIS during her time completing the duties of county planner nor was this qualification listed for the position, absent any discriminatory motives, the county can determine non-discriminatory criteria in its position requirements. See Beall v. Abbott Labs., 130 F.3d 614, 620 (1997) ("[A]bsent evidence of retaliatory motive, we leave to the employer's discretion the method of evaluating an employee's job performance."); see also Jiminez v. Mary Washington Coll., 57 F.3d 369, 383 (4th Cir. 1995) ("The crucial issue in a Title VII action is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment.").

Thus, with respect to plaintiff's claim of discrimination based on a failure to promote, defendant's motion to dismiss is GRANTED.

---

[5] Plaintiff also asserts that the only other black individual who worked full time and held a college degree while plaintiff worked for the county was over qualified for his position as a finance assistant. It is unclear how this assertion relates to plaintiff's claims, but this allegation is insufficient to support a plausible claim for any of plaintiff's discrimination claims.

(b)     Disparate Treatment

In order to state a claim for disparate treatment, plaintiff must show sufficient factual allegations to support a plausible claim that: (1) that she is a member of a protected class; (2) whose job performance was satisfactory; (3) that was subjected to adverse employment action; and (4) that similarly situated employees outside her class received more favorable treatment. White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

A claim of disparate treatment necessarily requires the court to compare plaintiff's treatment with that of others. Without sufficient facts to make the comparison, plaintiff's assertion is a "[t]hreadbare recital[ ]" of an element of the cause of action, insufficient to survive a motion to dismiss. Iqbal, 556 U.S. at 678. In Coleman, for instance, the Fourth Circuit affirmed the district court's 12(b)(6) dismissal even though the plaintiff alleged both that he "was treated differently as a result of his race than whites" and specifically identified a Caucasian coworker who allegedly engaged in contrarian workplace behavior but was not punished. Coleman v. Maryland Court of Appeals, 626 F.3d 187, 191 (4th Cir. 2010). The court based its decision on the absence of facts showing that the plaintiff and his coworker were "actually similarly situated," which prevented a proper comparison of their treatment. Id.

Plaintiff generally speaks of coworkers who are white who were not treated similarly to her, were promoted even when not qualified and not through formal processes, and who were not asked to perform increasing duties without increasing pay, but plaintiff does not offer a single specific example to support any of these allegations. In the area of training, plaintiff does identify specific white supervisors that received training whereas plaintiff did not, but plaintiff fails to establish a plausible basis for believing the supervisors she lists, the finance director, emergency services

director, county manager, and water department supervisor, are in any way similarly situated to plaintiff. Indeed, the job titles when compared to the job titles held by plaintiff indicate otherwise.

Finally, to the extent that plaintiff is alleging an overriding disparate treatment claim, plaintiff has offered insufficient allegations. Plaintiff provides statistics regarding the racial makeup of the county, appearing to allege that because the county is only 63.7% white but the professional and full-time administrative employees are "overwhelmingly white," the county engaged in discriminatory behavior. (Compl. ¶ 67-68.) Although "[s]tatistics with regard to the defendant's employment policy and practice may be helpful . . . ," Warren v. Halstead Indus., 802 F.2d 746, 753 (4th Cir. 1986), general statistics regarding racial makeup do not create a plausible claim for disparate treatment in this instance.

Accordingly, with respect to plaintiff's claim of discrimination based on disparate treatment, defendant's motion to dismiss is GRANTED.

(c)     Failure to Train

In order to state a claim for failure to provide training, plaintiff must show sufficient factual allegations to support a plausible claim that: (1) plaintiff is a member of a protected class; (2) defendant provided training to its employees; (3) plaintiff was eligible for the training; and (4) plaintiff was not provided training under circumstances giving rise to an inference of discrimination. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649-50 (4th Cir. 2002).

It is unclear what specific training plaintiff asserts she should have received. Plaintiff asserts generally that if her lack of knowledge concerning GIS prevented her promotion, she could have been trained as other white employees had been, including the new county planner. However, plaintiff fails to allege that the county provides such training, that this is the training the new county

planner received, that plaintiff was eligible for this training, or why an inference of race discrimination exists concerning her non-selection for that training.

Thus, with regard to Plaintiff's claim of discrimination based on failure to train, defendant's motion to dismiss is GRANTED.

### ii. Retaliation Claims

To plausibly allege retaliation in violation of Title VII to survive a motion to dismiss, an employee must sufficiently allege that: (1) she engaged in a protected activity, (2) her employer took an adverse employment action against her, and (3) that there was a causal link between the two events. See DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015). In the relevant time period, plaintiff alleges that defendant did not promote plaintiff to county planner in retaliation for her filing her first EEOC charge and for lodging numerous complaints concerning the way in which the county handled the parties' settlement agreement.[6]

### (a) First EEOC Charge

The only allegation in plaintiff's amended complaint that suggests any link between her filing her first EEOC charge in November 2013, a protected activity, and the county's adverse employment action that occurred sometime between August and November 2014, not promoting her, is that the one followed the other. However, in evaluating a retaliation claim, a court will not infer a causal link based on temporal proximity alone unless the adverse action happened in close proximity to when defendant became aware of the protected activity. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (stating in summary judgment context, "the cases that

---

[6] It appears in plaintiff's second EEOC charge plaintiff additionally alleged that defendant changed her hours in retaliation for complaining for not being promoted, but plaintiff did not pursue that claim in her amended complaint before this court.

accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'"); King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir.) (concluding in summary judgment context, a ten-week gap between protected activity and termination "gives rise to a sufficient inference of causation" but was "sufficiently long so as to weaken significantly the inference of causation between the two events").

The time elapse of roughly one year between the filing of the first EEOC charge and plaintiff not being promoted is too attenuated to infer causation absent any other indication of a causal link between the two.[7] This temporal proximity assertion represents the total of plaintiff's allegations concerning the link between filing her first EEOC charge and not being promoted. Plaintiff fails to allege any information regarding who specifically made the decision to hire the county planner, who made the decision to not hire plaintiff, or if those that knew she had filed the first EEOC charge or had complained were even involved in either hiring decisions. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 655 (4th Cir. 1998) (holding in summary judgment context,"[a] plaintiff cannot establish a prima facie case of retaliation when, as here, the relevant decisionmaker was unaware that the plaintiff had engaged in a protected activity").

Thus, plaintiff's Title VII retaliation claim based on her filing her first EEOC charge must be dismissed.

---

[7]     The court agrees with plaintiff's assertion that her participation in the EEOC conciliation meeting and negotiation of the terms of the settlement agreement in February 2014 are also protected activities, but these activities still occurred roughly seven to nine months before the decision was communicated to plaintiff that she did not receive the promotion, a time line too attenuated to infer causation without any other factual allegations. The court does not agree, however, with plaintiff's assertion that the county initiating the hiring process for a county planner was an adverse employment action against plaintiff, particularly in that plaintiff was considered for the position and plaintiff did not offer any specific example of another employee who did not go through such a hiring process to be promoted.

(b)     Complaints to the County

After the county determined plaintiff's new job description and determined not to alter plaintiff's salary, pursuant to the parties' settlement agreement, plaintiff filed written memorandum objecting to the new job description, requested a re-evaluation, and complained to three Gates County commissioners in person, by telephone, and through emails regarding her treatment and the work she was being asked to accomplish with no change in salary. These complaints began on July 1, 2014 and extended to August 2014, when the county initiated the hiring process to fill the job of county planner. Sometime between August 2014 and November 2014, plaintiff was informed that she was not promoted to the position of county planner.

As stated above, Title VII makes it illegal for "an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by" Title VII "or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). "The first part of this statute is known as the 'opposition clause,' while the second is the 'participation clause.'" Villa v. CavaMezze Grill, LLC, 858 F.3d 896, 900 (4th Cir. 2017). The opposition clause is at issue here.

Here, plaintiff failed to adequately allege that her activities were covered under the opposition clause. Opposition activity includes "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998). "Employees engage in protected oppositional activity when, inter alia, they complain to their superiors about suspected violations of Title VII." Boyer-Liberto v. Fontainebleau Corp.,

786 F.3d 264, 281 (4th Cir. 2015) (internal quotations omitted). "Title VII is not a general bad acts statute, however, and it does not prohibit private employers from retaliating against an employee based on her opposition to discriminatory practices that are outside the scope of Title VII." Bonds v. Leavitt, 629 F.3d 369, 384 (4th Cir. 2011).

Plaintiff's complaints stem from her position that the county had violated its responsibilities under the settlement agreement. Plaintiff had multiple avenues of recourse to oppose the county's actions, including notifying the EEOC director of noncompliance, 29 C.F.R. § 1614.504, or filing a breach of contract claim, which plaintiff did and which the court has addressed.

Plaintiff's Title VII retaliation claim based on her complaints regarding the parties' settlement agreement must be dismissed.

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion to dismiss (DE 38). Plaintiff's claims are DISMISSED WITHOUT PREJUDICE for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). The clerk is DIRECTED to close this case.

SO ORDERED, this the 16th day of August, 2017.

LOUISE W. FLANAGAN
United States District Judge